UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOHN BURKS,

        Plaintiff,

  v.

        Case No. 20-cv-782-pp

JASON TATE, MATTHEW WIERZCHOWSKI,
ALFONSO MORALES, ROSS LAUTENBACH,
MILWAUKEE POLICE DEPARTMENT,
TOM BARRETT, and CITY OF MILWAUKEE,

        Defendants.

---

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION TO SUPPLEMENT COMPLAINT (DKT. NO. 7), DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 8), DENYING PLAINTIFF'S SECOND MOTION FOR SANCTIONS (DKT. NO. 9), DENYING PLAINTIFF'S THIRD MOTION FOR SANCTIONS (DKT. NO. 12), GRANTING PLAINTIFF'S MOTION TO WITHDRAW PROPOSED SUPPLEMENT (DKT. NO. 13), DENYING PLAINTIFF'S MOTION FOR COURT TO ORDER A REPLY ANSWER (DKT NO. 19) AND STRIKING REPLY (DKT. NO. 20), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO SERVE SUMMONS (DKT. NO. 34) AND GRANTING PLAINTIFF'S MOTION TO AMEND/CORRECT COMPLAINT (DKT. NO. 42)**

---

On March 22, 2020 the plaintiff, who is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his rights under the Second, Fourth and Fourteenth Amendments. Dkt. No. 1. The allegations arise out of a search that the plaintiff alleges officers conducted of his home after responding to a 911 call reporting a burglary there. Id. at 4. The plaintiff paid the filing fee in full on June 9, 2020, so the court was not

1

obligated to screen the complaint. In the four months since he paid the filing fee, the plaintiff has filed eight motions. This order addresses those motions.

**I.    Motions Relating to the Pleadings**

   A.    <u>Plaintiff's Motion to Supplement Complaint (Dkt. No. 7) and Plaintiff's Motion to Withdraw Proposed Supplement (Dkt. No. 13)</u>

The May 22, 2020 complaint appears to name seven defendants—Officer Jason Tate, Officer Matthew Wierzchowski, Chief Alfonso Morales, Officer Ross Lautenbach, Milwaukee Police Department, Mayor Tom Barrett and the City of Milwaukee. Dkt. No. 1 at 1.

The complaint alleges that, on December 19, 2019, the police received a 911 call from "neighbor," indicating that "two Black Negros were burglarizing house at 4041 N. 45th Street." Dkt. No. 1 at 4. Officers Tate, Wierzchowski and Lautenbach responded to the call nine minutes later. <u>Id.</u> The plaintiff says that the officers entered "the burglarized house" and began clearing it "under the exigent circumstance exception" to the Fourth Amendment warrant requirement. <u>Id.</u> The complaint asserts that the officers ended the "protective sweep" four minutes later and "announced 'all clear.'" <u>Id.</u> The complaint alleges, however, that after clearing the house, the "cop cam shows a full-blown search of Plaintiff's house." <u>Id.</u> It alleges that the "cop cam shows the cops finding a gun that was in a cabinet." <u>Id.</u> The complaint says that an officer picked up the gun to obtain the serial number, then called dispatch, who ran the serial number. <u>Id.</u> The complaint indicate that the officer "never told dispatch the make" of the gun, and says that dispatch responded that "a gun with that serial number was reported as stolen. <u>Id.</u> The complaint states that

2

dispatch "indicated that he 'could not be sure of the make.'" Id. at 5. It says that the "cop cam" shows the officer seizing the gun. Id. The complaint also indicates that an officer announced, "we know there are no other *firearms* here," then ended the "illegal search of the plaintiff's residence." Id. The complaint alleges illegal search, illegal seizure, fabrication of evidence, selective enforcement (equal protection), negligent infliction of emotional distress, failure to train and failure to supervise. Id. at 6. The plaintiff seeks injunctive relief preventing the defendants from intentionally or negligently inflicting further emotional distress on the plaintiff, fees and costs, declaratory judgment and damages. Id. at 7.

The court mailed a service packet to the plaintiff on June 9, 2020. Only two weeks later—before any defendant had answered and well before the deadline for the defendants to answer—the plaintiff filed a document titled "Motion for leave to file supplemental complaint," citing Fed. R. Civ. P. 15(d). Dkt. No. 7. The plaintiff attached to the motion the proposed supplemental complaint, which contained the following three sentences:

1)   Respondeat Superior for MPD and responsible for his officers is MPD Chief Morales.

2)   Officer Lautenbach's report indicated that the gun was NOT stolen. See attach 1.

3)   Each of the officers appear to be searching my private residence without a warrant. See attach 2-3.

Dkt. No. 7-1 at 1.

Ten days later, before the court had had the opportunity to rule on the motion for leave to file the supplemental complaint, it received from the plaintiff

3

a document titled "Motion to Withdraw Supplemental." Dkt. No. 13. The document stated that the plaintiff "respectfully request to withdraw the supplement complaint that was filed with the motion to file the supplemental complaint," but also said that the plaintiff "does not withdraw the motion to supplement." Id. The plaintiff said that he had been looking for an attorney for several months and that he would like the attorney to write the supplement; the plaintiff said that if he failed to find a lawyer, he would "write and submit it." Id.

As the court understands it, the plaintiff was saying that he did not want to supplement the complaint at that time, but that he wanted to reserve the right to do so in the future.

> B. Plaintiff's Motion for Court to Order a Reply Answer to Defendant's Answer (Dkt. No. 19)

Meanwhile, the plaintiff appears to have served the original complaint on the defendants, because the court received defendant Tom Barrett's waiver of service on July 1, 2020, dkt. no. 10, and an answer from all the defendants on July 15, 2020, dkt. no. 16. A week later, the court received from the plaintiff a document titled "Motion to Order the Court to Order Reply answer to Defendant's Answer." Dkt. No. 19. Citing "FRAP rule 7,"[1] the plaintiff said that a reply to an answer is allowed if the court orders one. Id. The plaintiff characterized the defendants' answer as "boilerplate" and argued that it did not

---

[1] "FRAP" is the acronym for the "Federal Rules of Appellate Procedure;" those rules apply in appeals from the district court to the appellate court. The court suspects the plaintiff meant "FRCP," with is the acronym for the Federal Rules of Civil Procedure.

4

meet the obligation of attorneys for "cops" of "honesty, integrity, and candor to the tribunal." Id. The plaintiff asserted that the answer "wants honorable court to believe that they have not looked at the cop cam tapes." Id. The plaintiff says that he "got the tapes from them," that the defendants know what was on the tapes and that they "originally sent [him] a tape that was not readable." Id. He argued that defense counsel should be required to look at the tapes and "then do the ANSWER over." Id. He also alleges that they "redacted" the tapes. Id.

Along with this motion, the plaintiff filed a document titled "Plaintiff's Reply to Defendants Response to Complaint." Dkt. No. 20. It contains a series of still photos with captions written by the plaintiff.

The defendants filed a response to this motion. Dkt. No. 26. Noting the plaintiff's many filings since they had filed their answer, the defendants observed that "[t]he plaintiff appears to be interested in the Court allowing him to amend his complaint." Id. at 3. While arguing that their answer was legally sufficient, the defendants asserted that if the court allowed the plaintiff to amend his complaint, it would render his motion asking the court to order a reply moot. Id.

The plaintiff filed a reply brief. Dkt. No. 29. The plaintiff perceived that defense counsel was trying to speak for him and stated that he did not need "the City attorney to speak for [him], nor would any competent individual to allow an adversary to act as their advocate." Id. at 1. As for the defendants' assertion that the plaintiff appeared interested in the court allowing him to amend his complaint, the plaintiff asserted that he was allowed to amend his

5

complaint within twenty-one days, but also asserted that the amended complaint required court approval before "actually being filed and given full effect of a court order." Id. at 2. He characterized the defendants' response as "unprofessional and self-serving, and what one would expect from an adversary." Id.

Two days later, the defendants filed a response to the plaintiff's reply brief in support of the plaintiff's motion for the court to order a reply to the defendant's answer. Dkt. No. 30. The defendants characterized the plaintiff's filing as "caustic and asserted that it "cast[] aspersions on the professionalism of the undersigned counsel and unnecessarily disput[ed] whether undersigned counsel speaks for him." Id. at 1. The defendants advised the court that they continued to reply on their response brief. Id. at 2.

### C. Plaintiff's Proposed Supplement Complaint (Dkt. No. 22) and Supporting Brief (Dkt. No. 23)

On July 30, 2020, the plaintiff filed a proposed supplemental complaint, dkt. no. 22, a brief in support of the supplemental complaint, dkt. no. 23, and a proposed amended complaint, dkt. no. 24. The proposed supplemental complaint refers the court back to the June 22, 2020 motion to supplement the complaint—the motion the plaintiff said he did not wish to withdraw. Dkt. No. 22 at 1. The proposed supplemental complaint does not contain the allegations the plaintiff made in his original, May 22 complaint. Dkt. No. 22. Instead, it contains a series of still photos with captions, like his reply at Dkt. No. 20.

In the brief in support of his motion to file a supplemental complaint, the plaintiff says that the defendants will not be prejudiced by the court allowing

6

him to file an amended complaint because the facts in it "are well-known to Defendants, because they have the BWC and police reports that the Plaintiff relies on." Dkt. No. 23 at 3. He also says that "the Plaintiff has 21 days to Amend his complaint without leave of the court, making this motion probably moot." Id. Finally, he says that the proposed amended complaint "adds only one cause of action, one defendant, and more clearly describes the issue in the causes of action identified in the original complaint." Id.

The defendants filed a response opposing the plaintiff's request to supplement the complaint (and the supplemental complaint itself). Dkt. No. 31. The defendants cited Fed. R. Civ. P. 15(d), which allows a party to supplement a pleading with transactions, occurrences or events that occurred *after* the filing of the pleading to be supplemented. Id. at 31. The defendants argued that the plaintiff's supplemental complaint did not reference any events that occurred after the date on which he filed his amended complaint. Id. at 2. They characterized the plaintiff's "repetitious" filings as "vexatious and time-consuming." Id. They remind the court that part of its responsibility is to ensure that its resources are not wasted. Id. at 3. They asked the court to deny the motion to supplement the complaint. Id.

D.  Plaintiff's Proposed Amended Complaint (Dkt. No.24)

The proposed amended complaint—which the court received on the same day that it received the proposed supplemental complaint and the brief in support of the proposed supplemental complaint—is sixteen pages long. Dkt. No. 24. It contains the allegations from the original complaint and includes a

7

few photos (although the images are impossible to identify). Id. The plaintiff attached to the proposed amended complaint a police report and a photo of a disk. Dkt. Nos. 24-1, 24-2.

> E. Plaintiff's Motion for Leave to File Amended Complaint (Dkt. No. 42)

On September 14, 2020, the court received from the plaintiff a motion for leave to file an amended complaint. Dkt. No. 42. He attached to the motion a proposed amended complaint, dkt. no. 42-1, and several documents, including still photos, some emails and a page from what appears to be a court decision, dkt. no. 42-2. The plaintiff indicated in the motion that an "amendment changing parties requires leave of court." Dkt. No. 42 at 1. He asserts that "[n]either of the dispensable defendants who were added to the proposed complaint will not be included as defendants in this proposed amendment." Id. at 2. The plaintiff says that he needs to amend the complaint to address the "defendant's anticipated defense of Qualified Immunity," and indicates that he wants to add counts of intimidation and dereliction of duty, "including the names of the individual cop defendant's, dialogue, and motives." Id.

The proposed amended complaint added as a defendant the Milwaukee Fire and Police Commission. Dkt. No. 42-1 at 1.

> F. Analysis

In four and a half months, the plaintiff has filed a complaint, a motion to file a supplemental complaint, a motion to withdraw that supplemental complaint, another supplemental complaint, a proposed amended complaint and a motion for leave to file another amended complaint. The court

8

understands that the plaintiff is representing himself and is not a lawyer. But the defendants already have answered the first complaint he filed, and their answer—even though the plaintiff disagreed with it—was legally valid. The plaintiff needs to settle on the defendants he wishes to sue and the claims he wishes to bring. The lawsuit cannot proceed until the plaintiff has settled on an "operative" complaint.

The plaintiff twice has filed "supplemental" complaints. Fed. R. Civ. P. 15(d) says that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." So—a party must file a motion seeking leave to serve a supplemental pleading (no matter when he seeks to do so) and must have the court's permission to do so. The defendants correctly point out that a *supplemental* pleading serves one purpose—it allows a party to supplement the pleading with events that happened after the original pleading was filed. The court will grant the plaintiff's motion to withdraw his first supplemental complaint and will deny his motion to file the second supplemental complaint (Dkt. No. 7, seeking leave to file Dkt. No. 22). Neither supplemental complaint set out any transaction, occurrence or event that happened after May 22, 2020.

The plaintiff filed a proposed *amended* complaint on July 30, 2020. Dkt. No. 24. Amending a complaint is different from supplementing a complaint. A party may amend the complaint to correct errors, add facts, add or drop defendants and add or drop claims. Amendments to complaints involve events

9

that were described in the original complaint, not events that took place after the fact.

Fed. R. Civ. P. 15(a)(1) allows a party to amend his pleading one time "as a matter of course" if he does so within twenty-one days after serving the complaint or within twenty-one days after the defendant answers. The defendants filed their answer on July 15, 2020, so the plaintiff did not need to ask the court's permission to file the July 30, 2020 amended complaint. Since then, however, the plaintiff has asked to amend the complaint again.

On September 14, 2020, the court received from the plaintiff his motion to amend the complaint. Dkt. No. 42. Fed. R. Civ. P. 15(a)(2) says that once the twenty-one days from the date of service has passed, a party may amend his pleading only with the opposing party's written consent or the court's leave. The plaintiff has asked the court's leave to amend his complaint, and Rule 15(a)(2) says that the court "should feely give leave when justice so requires." The court has not yet entered a scheduling order, so allowing the plaintiff one last amendment will not prejudice the defendants. The plaintiff paid the filing fee so the court is not required to screen the second amended complaint under 28 U.S.C. §1915(e)(2). Weinschenk v. Central Intelligence Agency, 818 Fed. Appx. 557 (7th Cir. Aug. 27, 2020). The Seventh Circuit recently explained that when a plaintiff is not proceeding without prepaying the filing fee, "*only* frivolousness can justify the sua sponte dismissal without giving notice and the opportunity to respond." Id. at 558.

The court will grant the plaintiff's September 14, 2020 motion, will direct the clerk's office to docket the proposed amended complaint at Dkt. No. 42-1 (the second amended complaint) as the operative complaint and will give the plaintiffs the opportunity to answer.

The court will deny the plaintiff's Motion to Order the Court to Order a Reply answer to Defendant's Answer. Dkt. No. 19. The main reason the court will deny the motion is because it is moot, given that the court is allowing the plaintiff to file the second amended complaint. The court notes, however, that generally, the Federal Rules of Civil Procedure allow a complaint and an answer. Only if the court allows a reply to the answer may a plaintiff file such a document, Fed. R. Civ. P. 7(a)(7), and it is rare that courts allow replies. The court fully expects a defendant in a civil case to deny many of the allegations in the complaint. That is how lawsuits work. If the defendants agreed that they did what the plaintiff alleges that they did, they likely would have resolved the case before the plaintiff even filed the complaint, or shortly thereafter. It is legal and appropriate for defendants to deny the accusations in a complaint. The court anticipate that when the defendants answer the amended complaint, they will deny many of the allegations in it, and the court is highly unlikely to grant a request for leave to "reply" to that answer.

The court also notes that Civil Local Rule 7 (E.D. Wis.) provides for a motion, a response and a reply. It does *not* allow for responses to replies (such as the one the defendants filed relating to the plaintiff's motion to order the court to order a reply). The court understands that defense counsel was

11

offended by the plaintiff's allegations that counsel was unprofessional. The court warns both sides that it is improper and unprofessional to make personal attacks on the opposing party. The parties have every right to disagree with each other on legal issues, or on their interpretations of the facts. But the court will not tolerate name-calling, attacks on reputation or character or general incivility—not by the plaintiff, not by the defendants. The court expects the parties to disagree respectfully.

## II. Motions for Sanctions (Plaintiff's Motion for Sanctions (Dkt. No. 8), Plaintiff's Second Motion for Sanctions (Dkt. No. 9) and Plaintiff's Third Motion for Sanctions Dkt. No. 12))

Over the course of nine days, the plaintiff filed three motions for sanctions. The court received the first motion on June 23, 2020. Dkt. No. 8. In this motion, the plaintiff asserted that defendant Lautenbach began his shift on June 23, 2020 at noon, and that the plaintiff and his "representative" were there to serve the complaint and the summons. Id. The plaintiff says that he spoke with defendant Lautenbach briefly, and that after "District 7 were informed that we were serving [Lautenbach]," "they" told the plaintiff that one had to be a lawyer to file a complaint, that he had to be a lawyer "to sue us," and that he had to be a "processor to serve us." Id. at 1-2. The plaintiff said that he was asking for sanctions "in order to dissuade the other police from evading service," and the sanction he requested was for the court to allow him to mail Lautenbach the summons and complaint via certified mail. Id. at 2.

Seven days later, the court received the plaintiff's second motion for sanctions. Dkt. No. 9. In this motion, the plaintiff asserted that at 4:00 p.m. on

12

June 25, 2020, defendant Tate began his shift at District 7. Id. The plaintiff says that he and his "representative" saw Tate enter the building at 3:57 p.m. and that they were prepared to serve the summons shortly thereafter. Id. He says that when they asked to speak to Tate, they were told Tate was not available; he says they waited fifteen minutes. Id. The plaintiff asserts that the appropriate sanction would to allow service via certified mail "to his apartment on Prospect or at the 7th District." Id.

Two days later, the court received the plaintiff's *third* motion for sanctions. Dkt. No. 12. That motion states:

> Plaintiff john burks and representative went to District 7 police station at 8PM to serve Defendant. Defendant was in the office in the back. Defendant sent out a spy to see who I was. Spy went to back of the office and presumably reported that I was the party there to serve summons and complaint. Defendant left the office. Defendant sent someone up to tell me that he was not there. Defendant Matt Wierzchowski.

Dkt. No. 12.

All the defendants named in the complaint answered on July 15, 2020. Dkt. No. 16. They raised a number of affirmative defenses: (1) the defendants cannot be sued in their individual capacities; (2) the defendants are cloaked in various forms of immunity; (3) the plaintiff failed to mitigate damages; (4) the plaintiff failed to file the appropriate notice/claim documents; (5) the claims may be barred by Heck v. Humphrey; and (6) the plaintiff already has raised the issue of the return of property in the Milwaukee County Circuit Court. Id. at 9. The defendants did not challenge service and they have answered. No one "evaded" service.

13

The court cautions the plaintiff that seeking sanctions is a serious, serious matter. Sanctions are punishments for repeated and proven improper behavior. Nothing in the plaintiff's motions warrants sanctions. The court cautions the plaintiff against filing motions for sanctions unless there are extreme and unusual circumstances.

### III. Plaintiff's Motion for Extension of Time to Serve Summons (Dkt. No. 34)

On August 14, 2020, the plaintiff filed a motion for order extending for an additional thirty days his time to serve defendants Lautenbach and Wierzchowski. Dkt. No. 34. The plaintiff says he diligently attempted to locate these defendants and that both defendants "are certainly aware of the existence of this well-known lawsuit, have evaded those efforts and has failed to respond to the numerous attempts to contact them in person, by phone and by email." Dkt. No. 34 at 1. Curiously, four days later (on August 18, 2020), the plaintiff a Proof of Service form indicating that a process server named Carlton Manske had served Lautenbach personally on July 28, 2020, dkt. no. 35, and that Manske had personally served Wierzchowski on July 29, 2020, dkt. no. 35-1. The defendants—including Lautenbach and Wierzchowski—answered on July 15, 2020, a month *before* the plaintiff filed the motion for an extension of time. Dkt. No. 16. Perhaps the plaintiff was trying to serve the July 30, 2020 first amended complaint. Regardless, because the court is allowing the plaintiff to file a second amended complaint, the court will deny the motion as moot.

14

**IV. Scheduling**

On August 14, 2020, the defendants filed a motion asking the court to schedule a telephone conference to address the plaintiff's "frequent filings" that were "vexatious for the court as well as undersigned counsel." Dkt. No. 32. The defendants asked the court to schedule a telephone conference at the earliest date available on the court's calendar. Id. Two weeks later, the defendants filed a Rule 26 scheduling plan, indicating that the plaintiff conferred with them several times via email but that the parties had been unable to agree on the contents of the report and so were filing separate plans. Dkt. No. 38 at 1. The defendants proposed the following deadlines:

> Exchange of initial Rule 26(a) disclosures: August 31, 2020
> Close of discovery: January 31, 2021
> Dispositive motions: February 28, 2021

Id. at 2.

The court received the plaintiff's report the same day. Dkt. No. 4. The plaintiff's report contained unnecessary legal argument, but indicated that he filed an amended complaint on July 30, 2020, which he believed would moot a number of his motions. Id. at 2. He asked the court limit written discovery to no more than thirty requests to admit for each defendant and twenty interrogatories for each defendant and represented that he would file a motion for summary judgment "as soon as practical. Dkt. No. 40 at 3.

The court's staff had set a telephone scheduling conference for October 21, 2020 at 1:30 p.m. Having reviewed the docket, however, the court does not believe that conference is necessary, and will remove it from the hearing

15

calendar. The court expects that now that it has allowed the plaintiff one, final opportunity to amend his complaint, the plaintiff will stop filing requests to supplement or amend. The court expects that the plaintiff also will cease filing meritless motions for sanctions. The court anticipates that the defendants will respond to the amended complaint; once they have done so, the court will ask the parties for an updated Rule 26(f) plan. The court strongly encourages the plaintiff to work with defense counsel in selecting the dates for completing discovery and filing dispositive motions. The court understands that the plaintiff strongly believes that the *defendants* violated his rights. But the defendants' *lawyers* are not the defendants. When the parties work together to settle on dates, the case goes more smoothly for everyone.

**V. Conclusion**

The court **DENIES** the plaintiff's motion to supplement complaint. Dkt. No. 7.

The court **DENIES** the plaintiff's first motion for sanctions. Dkt No. 8.

The court **DENIES** the plaintiff's second motion for sanctions. Dkt. No. 9.

The court **DENIES** the plaintiff's third motion for sanctions. Dkt. No. 12.

The court **GRANTS** the plaintiff's motion to withdraw the proposed supplement. Dkt. No. 13.

The court **DENIES** the plaintiff's motion for court to order a reply answer. Dkt. No. 19. The court **STRIKES** the plaintiff's unauthorized reply. Dkt No. 20.

The court **DENIES AS MOOT** the plaintiff's motion for extension of time to serve summons. Dkt. No. 34.

16

The court **GRANTS** the plaintiff's motion to amend/correct complaint. Dkt. No. 42. The court **DIRECTS** the Clerk of Court to docket the document at Dkt. No. 42-1 as the second amended complaint. That document will be the operative complaint.

The court **ORDERS** that the defendants must respond to the second amended complaint as required by the rules.

The court **ORDERS** that the scheduling conference set for October 21, 2020 is **REMOVED** from the court's calendar.

Dated in Milwaukee, Wisconsin this 13th day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**