

# UNITED STATES DISTRICT COURT
# DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT WI
2021 SEP 14 P 2 00
CLERK OF COURT

| | |
|---|---|
| John Burks,<br><br>            Plaintiff,<br><br>v.<br><br>Officer Jason Tate, Officer Matthew Wierzchowski; Chief of Police; Officer Ross Lautenbach; Milwaukee Police Department; Mayor Tom Barrett, City of Milwaukee; Milwaukee Fire and Police Commision, all individuals being sued in their individual and official capacity. | **Civil Action No: 20-cv-782**<br>**First Amended**<br>**COMPLAINT**<br>**Jury Trial Demand** |

            Defendants.

COMPLAINT

NOW COMES Plaintiff, JOHN BURKS, and complaining of Defendants, CITY OF MILWAUKEE, CHIEF OF POLICE, Officer Tate, Officer Wierzchowski, Officer Lautenbach, Milwaukee FPC states as follows:

Plaintiff John Burks, alleges:

## STATEMENT OF CLAIMS

•      Plaintiff seeks money damages and equitable relief from Defendants for violating his constitutional rights, and injunctive relief to prevent injury to himself in the future. He also brings forward supplemental claims for violations of Wisconsin state law.

## INTRODUCTION

- 1) Plaintiff was the victim of Second, Fourth, and Fourteenth Amendment violations by Defendants in violation of the Fourth Amendment to the U.S. Constitution and Wisconsin state tort laws.

- Plaintiff brings suit under 42 U.S.C. § 1983.

- Plaintiff has served notice of his state law claims in compliance with 893.80 Stat § 466.05.

**JURISDICTION AND VENUE**

- 2) This Court has jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), and 42 U.S.C. §§ 1981, 1983, and 1988. This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367. This action arises under the United States Constitution as applied to state and/or local authorities through 42 U.S.C. § 1983. Venue is proper in this district based on 28 U.S.C. § 1391(b), as Defendants are residents of this district and the acts or occurrences giving rise to these claims occurred in this district.

**PARTIES**

- 3) Plaintiff John Burks was a Milwaukee resident. Plaintiff is a Black Negro male and a member of a protected class. He was 57 years old at the time of the incidents described in this Complaint.

2

• 4)    Defendants are all Wisconsin municipal entities and/or individual members of law enforcement agencies, in an appointed or elected capacity.

5)    Defendant City of Milwaukee operates the Milwaukee Police Department (MPD), a law enforcement agency, and is a municipality capable of being sued under Wisconsin law. The city is the legal entity responsible for the MPD. Plaintiff bases all applicable and appropriate claims as to Defendant City of Milwaukee and the MPD on the doctrines of respondent superior or vicarious liability, and municipal liability pursuant to *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).    Defendant City of Milwaukee ("Milwaukee"), with offices of its executive at 200 E. Wells Street, Milwaukee, WI 53202, is and was at all times material hereto, a Municipal Corporation organized under the laws of the State of Wisconsin. Milwaukee established, operated and maintained Milwaukee Police Department ("MPD") at all times material hereto; Milwaukee is ultimately responsible for the training, supervising, and discipline of MPD employees and the creation and implementation of its policies and procedures through its Chief of Police, and had ultimate control and authority over MPD and all Defendants, and pursuant to Wis. Stat. § 895.46, is obligated to indemnify all Defendants in this action.    The City receives a substantial amount of federal financial assistance for law enforcement activities.

6) Defendant Chief of Police of the Milwaukee Police Department. In that capacity he oversees the MPD. By law, custom, defacto or otherwise, and/or delegation, he has policymaking authority over the police department for all actions at issue in this case. He is responsible for ensuring that the policies and practices of the MPD comply with federal and state requirements for the treatment of citizens. He is sued in his official capacity for all the constitutional claims at issue arising  out of Defendant's unlawful racially motivated tactics. At all times relevant to this action,

Chief was acting under color of law and within the scope of his employment with the MPD or Milwaukee. Alphonso Morales was, at all times relevant, the Chief of Police of the MPD. Morales was unanimously demoted by the commission for his failed interactions with black people. He resigned from MPD in August 2020 after the demotion.

The Chief is sued in his personal, official, and individual capacities pursuant to Wisc. stat. § 466.01 et seq. and other applicable law. Because Civil Asset forfeiture is the mechanism how they fund the MPD in part, Morales was guilty of encouraging, sanctioning, and failing to rectify the MPD's unconstitutional practices, despite being fully on notice that such violations were occurring.

7) Defendant Milwaukee Fire and Police Commission

("FPC"), the civilian body charged with MPD oversight. Defendants Morales and FPC are Defendant Milwaukee's final policymakers with respect to the policies, practices, and customs, law enforcement oversight, training, supervision, and monitoring. FPC is a municipal agency of the City under Wisconsin law. Pursuant to Wisconsin Statute § 62.50 and Milwaukee City Charter Ordinance § 314, the FPC oversees all aspects of MPD operations and policies, identifies systemic problems with the MPD, disciplines employees for misconduct, and evaluates MPD policies, practices, and customs relating to illegal searches and seizure, and intimidation of civilians.

8) Defendant Ross Lautenbach was, at all times relevant, police cop for the MPD and an adult resident of the State of Wisconsin. He is sued in his personal, official,

Case 2:20-cv-00782-PP Filed 09/14/20 Page 4 of 22 Document 1-1

and individual capacities pursuant to Wisc. stat. § 466.01 et seq. and other applicable law.

9) Defendant Matthew Wierzchowski was at all times relevant, police cop for the MPD and an adult resident of the State of Wisconsin. He is sued in his personal, official, and individual capacities pursuant to Wisc. stat. § 466.01 et seq. and other applicable law.

10) Defendant Jason Tate was, at all times relevant, police cop for the MPD and an adult resident of the State of Wisconsin. He is sued in his personal, official, and individual capacities pursuant to Wisc. stat. § 466.01 et seq. and other applicable law.

11) All defendant law enforcement officers, agents and/or employees were, at all times relevant to this Complaint, working as on-duty licensed Wisconsin peace officers acting under color of state law and within the scope and course of their official duties and employment as officers.

## IV. GENERAL FACTUAL ALLEGATIONS

12) On Dec 2, 2019, cops received 911 call from neighbor indicating that two Black males were burglarizing house at 4041 N 45th Street.

13. Defendants Tate, Wierzchowski, and Lautenbach (defendant cops, hereinafter) were on duty for the Milwaukee Police Department.

14.   Defendants received the 911 call and arrived at 4041 N. 45th nine minutes later.

15.   Defendant cops entered the burglarized house and began a "protective sweep" under the exigent circumstance exception to 4th amendment warrant requirement.

*16.*   A protective sweep is a quick and limited search of a premise to protect the safety of police officers and others.   It is narrowly confined to a cursory visual inspection of those places where a person might be hiding.   Buie v. Md, 494 U.S. 325,327 (1990).

17.   Defendant cops ended the protective sweep about 3 minutes after entering the house and announced "all clear".

17.   A search, as defined by the Wisconsin Supreme Court, is looking into hidden places for contraband, instrumentalities of a crime, fruits of a crime or evidence of a crime with the intent of charging the individual with an offense.

A warrantless search is presumptively unreasonable.   For the routine search of rooms other than that in which an arrest occurs, or for searching desk drawers or other closed or concealed areas, absent well recognized exceptions, a search warrant is required.  p.395 U.S. 763 Chimel v. California.

18.  The right of persons to be protected from warrantless searches of their homes (unless the searching officers have probable cause and there are exigent

Case 2:20-cv-00782-PP   Filed 09/14/20   Page 6 of 22   Document 41

circumstances) - was clearly established. Therefore, qualified immunity generally is not available to these cop defendants.

19.     After clearing, the cops searched the Plaintiff's house. The three cop defendants searched the plaintiff's house for contraband for about 15 minutes. Defendant cops did not have a warrant to search Mr. Burks' house.

THE ILLEGAL SIEZURE

20.    The cop cam shows the cops finding a gun that was in a cabinet.

21.    A defendant cop picked up the gun to obtain the gun's serial number. Cop Wierchowski called dispatch, who and ran gun's **serial number**, **make** and **caliber**.

22.    At 1:13:45z, Tate cam, cop Lautenbach asked "Did it come back?"

23.    Cop Wierzchowski replied "Nothing with that serial number is coming back, **not for the make of it**". However, dispatch reported two firearms with that serial number were reported as stolen.

24.    Cop Lautenbach stated "Then its not stolen". Cop Wierzchowski concluded "Inventory for safekeeping."

25.    Safe Keeping. During the inventory process, the police will remove and seize items to prevent them from being lost or stolen. If no charges are issued, and the seized items are not needed for any other purpose, they are returned to the rightful owner upon discharge from the police station.

Case 2:20-cv-00782-PP   Filed 09/14/20   Page 7 of 22   Document 1-1

26.    Cops were confused.    They did not know how to inventory the firearm without knowing who the property owner was.    "We don't even have ...duh, like, a name".  (see 1:14:45z, Tate Cam).

27.  The MPD Standard Operating Procedures manual presents the following:

**Property owner information is available by accessing the city of Milwaukee's web site and accessing the City Assessor's Office home page or Department of Neighborhood Services (DNS) home page (Milwaukee City Ordinance 200-51.5 requires that the owners of all commercial and most residential properties must provide the DNS registry with the name, address, and phone number of the property owner).**

28.  The cop cars are equipped with computers that would enable them to ascertain the property owner information.

29.    At 1:19:05z on Tate cam, cop asks "Do we just take that one for safekeeping? Are we allowed to just take it?

30.    Cop at scene responded: "When we ran the serial number, duh...if it's coming back stolen. duh ...  If not, we can't take it though".

31.    Wierzchowski:    "Under the name i gave it, duh ... Jennings 22 long rifle. Once we go upstairs ... I'm gonna call".    Cop Wierzchowski calls dispatch again. A different person answers the phone.

Case 2:20-cv-00782-PP    Filed 09/14/20    Page 8 of 22    Document 14-1

i  Exhibiting deliberate indifference, Wierzchowski never told dispatch the **make** of the firearm.  Just the **serial number** and **caliber**.

ii Dispatch indicated that a gun with that serial number was reported as stolen. But bad cop already knew that from his previous query.

iii  Dispatch cautioned bad cop that he "could not be sure of the make".

33.    The cop cam shows cop illegally seizing the gun without probable cause. Arizona v. Hicks, 480 U.S. 321 (1987), held that the Fourth Amendment requires the police to have probable cause to seize items in plain view.

34.  After witnessesing Wierzchowski manipulate the system, cop Lautenbach tried to cover his butt by submitting a report indicating the gun was NOT stolen. (Exhibit I).   However,    cop defendants violated Mr. Burks' right to equal protection of the laws under the Fourteenth Amendment through omission. Each defendant officer on the scene had a duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in the presence of the defendant officers, by others acting under color of state law.   The defendant cops each failed to intervene or take any other reasonable steps to stop the illegal seizure.

35.  This seizure was unlawful from the git-go.  Nevertheless, "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests," for example by retaining property for an unreasonably long time. United States v. Jacobsen, 466 U.S. 109,

Case 2:20-cv-00782-PP   Filed 09/14/20   Page 9 of 22   Document 41-1

124 & n.25 (1984) (citation omitted). A 30-day delay in returning a vehicle to its owner turned what was originally a lawful seizure into an unlawful one. Sandoval v. City of Sonoma, 72 F. Supp. 3d 997, 1010 (N.D. Cal. 2014).

35. On information and belief, Wierzchowski's (7260) contribution to the police call indicated "STOLEN FIREARM RECOVERED FROM HOUSE CLEARING". See exhibit

36. Based on the foregoing (19 - 35), qualified immunity is NOT available to bad cop.


## THE ILLEGAL SEARCH

37. The race-based policing policies under former chief cop Flynn were so heavily engrained in Milwaukee cop culture, that they continue long after Flynn's ouster. The race-based searching and seizure of a private residence is a by-product of years of race-based search and seizure of private vehicles and homes.

38. Terry v. Ohio and Buie v. Md are often intertwined, but because of the **sanctity of the home**, a private residence is given the highest 4th amendment protection.

39. The unlawful misconduct described in this claim was also undertaken pursuant to the de facto policy and practice of the City of Milwaukee.

40. The acts of the individual defendants, including unlawfully searching and seizing Mr. Burks without any justification, was done in accordance with the

Case 2:20-cv-00782-PP Filed 09/14/20 Page 10 of 22 Document 45

Milwaukee and its Police Department's de-facto policy, decision or custom condoning illegal search seizure and/or otherwise violating person's equal protection rights, including defendant chief of cops', failure to adequately discipline the defendant cops for such violations. That these respective de facto policies were officially adopted, expressly or implicitly, or practiced or promoted by the Milwaukee, through its Chief of Police, and are in harmony with practiced customs in MPD, even though such custom may not have received written formal approval by the City, and even though these de-facto policies are inconsistent with or even violate MPD's written policies.

41. None of the cop defendants faced any disciplinary action for their involvement in the incident bringing rise to this complaint. If they did, they would be able to sue the city claiming that they were just doing what they were trained to do.

42a. This official or de facto policy or custom of utilizing illegal search and seizure or otherwise violating person's equal protection rights permitted, encouraged, tolerated and ratified the actions of all in malicious or reckless disregard or with deliberate indifference to Mr. Burks' Fourth and Fourteenth Amendment Rights by, among others, the defendant Chief's failure to adequately discipline the cops for their unlawful conduct and not just for failing to supervise the situation as in the three cop defendants discipline.

42b. That this official or de-facto policy and custom of utilizing illegal search and seizure and/or violating person's equal protection rights arose and/or was allowed to continue as a result of, among others, the Milwaukee and the MPD's failure to adequately discipline, supervise, and train its employees. Upon information and belief, the defendant cops and other MPD cops had previously used illegal search

and seizure in an unjustified and excessive manner, without being adequately disciplined and/or properly trained.

43. The conduct, as alleged above and below, of defendants, and against Mr. Burks, took place in substantial part because Mr. Burks is a Black Negro.

44. While illegally searching the house, defendant cops made racist comments, such as accusing the plaintiff of "stealing power", being a boy, being "fresh out the pokey" (jail), "cooking crack", "drinkin and fuckin", and "having stuff (contraband) hidden" in the house. Defendant cops made these statements, and illegally searched the house fully aware that their cop cams were on.

45. Mincey v. Arizona says "it being this kind of judgmental assessment of the reasonableness and scope of a proposed search that the 4th amendment requires be made by a magistrate, not a police officer pp394-395

46. A May 29, 2019 letter from the city attorney to the common council stated the city has made the following efforts at improving the department. These efforts include:

    1) additional training relating to fair and impartial policing

    2) training in supervisory skills

    3) supervisory review of officer body cam footage.

47. On information and belief, no supervisor reviewed the body cam footage. Defendants returned from a 911 burglary call, not with a suspect, but with a gun

Case 2:20-cv-00782-PP Filed 09/14/20 Page 12 of 22 Document 45

that they acknowledge was taken from a cabinet and two conflicting reports regarding what gave them the authority to seize the firearm. But if a supervisor did review it, this demonstrates MPD condonation of illegal search and seizure.

48. Cop defendants did not announce their intention to search the house. Cops are required to announce their presence and **purpose** prior to entering.

49. In accordance with MPD de facto policy, cop defendant Tate did not begin his illegal search until he had his gloves on. see 1:10:56z on Tate cop cam.

OPEN RECORDS REQUEST

50. On 4/13/20, an open records request produced a cop cam images of Defendants while at 4041 N. 45th. Since then, on information and belief, the office of the city attorney has directed the MPD Open Records not to respond to Plaintiff's request.

51. The following images, obtained from the cop cams are entitled to a presumption of truth.

*Show images.*  See exhibits I -IV

52. The majority of these images are of cops doing dirty. However, they were usually caught doing dirt not by their own cop cam, but by another cop's camera. In other words, they were skilled at doing dirt outside the view of their own cop cam - which would suggest that they do this all the time.

In other words, these rookie cops, fresh out of the academy learned how to be dirty from MPD.

See Tate cam 1:16:26z, Tate: "I bet this guy has some stuff (contraband) hidden here". Wierzchowski "duh... I'm pretty sure he does". Tate, "it depends on what we are allowed to go in and go through"? In other words, defendant Tate sought guidance on from a fellow rookie in determining to what extent does MPD custom and policy allow a cop to illegally search and seize a Black Negro's residence in a marginalized, ghetto community.

## WASHINGTON HEIGHTS

53. Milwaukee might be the most segregated city in the US. Plaintiff alleges that 53216, a predominantly black zip code, is policed differently than white zip codes.

54. The former chief cop acknowledges this:

"Yes, of course we are going to stop lots of innocent people. The point is, do folks understand what their role is as a cooperative citizen in having a safe environment." When questioned about the Milwaukee Journal Sentinel findings, Flynn publicly stated that such racial disparities are to be expected. Flynn told the Milwaukee Journal Sentinel, "If we are going to heavily engage with those communities that are both victimized and from where a significant majority of our offenders come, we are going to generate disparities because of where we're physically located."

55. Our courts appear to concur with Flynn. (see exhibit VI)

56. A red line still exists in Milwaukee on North Avenue that extends west from 48th Street to the county line. Virtually no black property-ownership exist south of

the red line.  Exhibit V shows why the red line still exists.      Maintaining Washington Heights whiteness is as simple as saying "I'm sorry, but I couldn't work the computer system."

57.  In other words, in Milwaukee, if you are black, the redlines exclude you from certain neighborhoods, and the areas that you are available to you are saturated with cops, even though there is no significant evidence that those areas have more crime.  see exhibit VII.

*Exhibit VII*

*A black Milwaukee driver is seven times as likely to be stopped by city police as a white resident driver, a Journal Sentinel analysis of nearly 46,000 traffic stops has found.*

*Police also searched black drivers at twice the rate of whites, but those searches didn't lead to higher rates of seized weapons, drugs or stolen property.*

*Source - Ben Poston of the Journal Sentinel*

*Dec. 03, 2011*

58.  Mayor Barrett has done nothing to stop this redlining in this city.

**INTIMIDATION**

59.  At 3:30am on July 5th, 2020, a MPD cop car parked in front of Plaintiff's car and sat there for an unspecified time.  Plaintiff called 911 to see if there were any issues that would require a police presence at 4041 N. 45th.

60.  The 911 operator indicated that there might have been something in the area earlier in the day, but, plaintiff knew that there was nothing at 4041 N. 45th that

would require the cops at 3:30am. Plaintiff took a photo of the cop car, and the cop car quickly sped off.

∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧∧

61. As a result of the illegal searches perpetrated and allowed by these defendant cops, Mr. Burks experienced physical pain, emotional distress, humiliation, and trauma. Because all of his neighbors witnessed the hour - long police occupation and search of his home, the Plaintiff suffered the indignity of being wrongfully branded as a criminal suspects due to race or ethnicity.

62. Defendants' owed a duty to Plaintiff to act as reasonable persons. This duty includes an obligation to lawful, manner and in compliance with federal law.

63. Defendants' conduct toward plaintiff resulted in a breach of defendants' duties to act as reasonable, prudent persons.

64. Emotional distress was a field of danger that defendants should reasonably have anticipated and guarded against.

65. As a result of defendants' breach of their duties, Plaintiffs suffered legally compensable emotional distress damages.

66. Failed to take sufficient corrective and remedial action against MPD cops who provide fabricated, false, or impermissible justifications for seizing and searching.

67. Failed to take sufficient corrective, disciplinary and remedial action against MPD officers who conceal or fail to report police misconduct.

68. By such acts and omissions, they have acted recklessly and with deliberate indifference to the constitutional and statutory rights of those who would come into contact with the MPD.

**CLAIMS FOR RELIEF**

70. Plaintiff incorporates by reference each and every statement and allegation set forth throughout this Complaint as if fully rewritten here.

Charge 1   Illegal Search

71. Plaintiff re-alleges and incorporates by reference the allegations of all the preceding paragraphs.  Cop intelligence center illegally search gun for forensics.

Charge 2   Illegal Seizure

72.  Plaintiff re-alleges and incorporates by reference the allegations of all the preceding paragraphs.   Cops had no business seizing the gun, because it was in a cabinet and not in plain view.  It was found only when they exceeded the scope of a "protective sweep" by looking in a cabinet.

73. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

74. The misconduct described in this Count was undertaken by defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

Charge 3   Fabrication of Evidence

75. Plaintiff re-alleges and incorporates by reference the allegations of all the preceding paragraphs. In order to seize the firearm, Wierzchowski deliberately omitted the make of the firearm.

76. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

77. The misconduct described in this Count was undertaken by cop defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

78. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

79. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

Charge 4    Selective Enforcement

80. Plaintiff re-alleges and incorporates by reference the allegations of all the preceeding paragraphs.

81. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

82. The misconduct described in this Count was undertaken by defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

Charge 5   Negligent Infliction of Emotional Distress

83. Plaintiff realleges and incorporates by reference the allegations of all the preceeding paragraphs.

84. As described more fully above, one or more of the defendants had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had he been so inclined, but failed to do so.  Lautenbach and Tate both were aware the the gun was not stolen, and Lautenbach, although he refused to endorse Wierzchowski's manipulative act, they nonetheless let him illegally seize the firearm.

85. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

Charge 6   Failure to Train

86. Plaintiff re-alleges and incorporates by reference the allegations of all the preceeding paragraphs.  Defendant cops did not know how to find property owner information.

87. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

88. The misconduct described in this Count was undertaken by defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

Charge 7   Failure to Supervise

89. Plaintiff re-alleges and incorporates by reference the allegations of all the preceeding paragraphs.  Three rookie cops together on a burglary call.

90. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

91. The misconduct described in this Count was undertaken by defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

Charge 8   Equal Protection 14th Amendment

92. Plaintiff reallege and incorporate by reference those paragraphs set forth above as if fully set forth herein.

93. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

95. The misconduct described in this Count was undertaken by defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

Charge 9   Intimidation

96. Plaintiff reallege and incorporate by reference those paragraphs set forth above as if fully set forth herein.

## VI. JURY DEMAND

Plaintiffs hereby demand a jury.

## VII. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against the defendants, and grant the following:

97. For a temporary restraining order, a preliminary and a permanent injunction, which enjoins permanently and restrains during the pendency of this action, defendants and other persons acting in concert with them from intentionally or negligently inflicting further emotional distress on Plaintiff;

98. Order defendants to pay Plaintiff's attorneys' fees and costs as authorized by 42 U.S.C. §1988; interest and any other relief deemed necessary and proper;

99. Enter a declaratory judgment on behalf of Plaintiff that defendants' policies, pattern of practices, customs, lack of supervision, failure to train, acts, and omissions, described herein, constituted excessive force in violation of the Fourth Amendment and in violation of Wisconsin state law;

100. Enter judgment on behalf of Plaintiff against Defendants for reasonable actual damages sufficient to compensate him for the violation of his Fourth Amendment rights and rights under Wisconsin state law;

101. Permanently enjoin and prohibit Defendants from interfering with Plaintiff's constitutional rights. Specifically, to enjoin Defendants from:

    a. Retaliating against Plaintiff or his family for bringing this lawsuit; and

    b. Subjecting Plaintiff to police crimes in the future.

102. Order Defendants to pay punitive and other exemplary damages based on 42 U.S.C. § 1983 claims;

103. Grant all other and additional relief to which Plaintiff may be entitled.

Respectfully Submitted
8/8/2020

John W Bob
424 202 0764
JWB-44 @ Hotmail.com

Case 2:20-cv-00782-PP   Filed 09/14/20   Page 22 of 22   Document 1451