UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN BURKS,

        Plaintiff,

  v.

        Case No. 20-cv-782-pp

JASON TATE, MATTHEW WIERZCHOWSKI,
ALFONSO MORALES, ROSS LAUTENBACH,
MILWAUKEE POLICE DEPARTMENT,
TOM BARRETT, and CITY OF MILWAUKEE,

        Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO DETERMINE SUFFICIENCY OF ANSWERS OR OBJECTIONS (DKT. NO. 75); DENYING PLAINTIFF'S MOTION TO DETERMINE SUFFICIENCY OF ANSWERS (DKT. NO. 81); DENYING PLAINTIFF'S MOTION TO EFILE OR FILE ON CDS OR DRIVES (DKT. NO. 83); DENYING PLAINTIFF'S MOTION TO DETERMINE SUFFICIENCY OF ANSWERS (DKT. NO. 86); DENYING PLAINTIFF'S MOTION TO COMPEL AND DETERMINE SUFFICIENCY OF ANSWERS (DKT. NO. 87); DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER (DKT. NO. 89); DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DKT. NO. 94); DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR EXTENSION OF DISCOVERY DEADLINE (DKT. NO. 95); GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RULING ON DEFENDANTS' DISPOSITIVE MOTION (DKT. NO. 97); STAYING DISCOVERY; SETTING BRIEFING SCHEDULE; AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO RESCHEDULE (DKT. NO. 99)**

In November 2013, the plaintiff—representing himself—filed a lawsuit against several Milwaukee police officers, the chief of the Milwaukee Police Department and the mayor of the city of Milwaukee. <u>Burks v. Martinez, *et al.*</u>, Case No. 13-cv-1316 (E.D. Wis.), Dkt. No. 1. He alleged that in November 2013, a Milwaukee police officer forced him out of his car at gunpoint, frisked him

1

and detained him, alleging that he had given the officer false information. Id. The plaintiff alleged that these events were the result of discriminatory racial profiling. Id. The plaintiff amended the complaint a couple of months later, id. at dkt. no. 5, but Magistrate Judge William E. Callahan, Jr. dismissed the case on July 11, 2014 because the plaintiff did not timely serve the defendants, id. at dkt. no. 7.

Not quite six years later, the plaintiff filed this lawsuit. Dkt. No. 1. He has sued Milwaukee police officers, the Milwaukee police chief, the police department itself, the city of Milwaukee and the mayor. Id. at 1. He asserts a series of claims based on a December 2, 2019 search of a house at 4041 N. 45th Street. Id. In contrast to the 2013 case, the defendants in this case have been served, but that triggered a series of filings by the plaintiff, many of which were premature or lacked any basis in the law. On October 13, 2020, the court issued an order ruling on the many outstanding motions. Dkt. No. 43.

The plaintiff then filed another raft of motions. The court ruled on these motions during a January 21, 2021 status conference and allowed the plaintiff to file a second amended complaint. Dkt. No. 71. In that same order the court set a deadline of June 30, 2020 by which the parties should complete discovery and a deadline of July 30, 2021 by which they must file dispositive motions. Id. at 2-3.

The second amended complaint that the court allowed the plaintiff to file alleged that the plaintiff is a "Black Negro male and a member of a protected class" who was fifty-seven years old at the time of the events described in the

complaint. Dkt. No. 45 at ¶3. It asserted that on December 2, 2019, "cops" received a 911 call from a "neighbor indicating that two Black males were burglarizing house at 4041 N. 45th Street." Id. at ¶12. It indicated that defendants Tate, Wierzchowski and Lautenbach (whom the plaintiff calls "defendant cops") were on duty, received the 911 call and arrived at the address nine minutes later. Id. at ¶¶13-14. The complaint alleged that the three officers entered the "burglarized house" and began to conduct an "protective sweep." Id. at ¶15. It asserted that they ended the sweep about three minutes after entering the house and announced "all clear." Id. at ¶17.[1] The complaint alleges that the three officers then searched "the plaintiff's house for contraband for about 15 minutes," and that they did not have a warrant. Id. at ¶19.

The second amended complaint next alleges that the "cop cam" showed the officers finding a gun in a cabinet. Id. at ¶20. It asserted that "[a] defendant cop" picked up the gun to get the serial number, and that Wierzchowski called dispatch, "who and ran gun's **serial number, make and caliber.**" Id. at ¶21. The pleading alleges dispatch reported that two firearms with that serial number were reported as stolen, but that Lautenbach concluded that the gun was not stolen and that Wierzchowski concluded that the gun should be inventoried for safe keeping. Id. at ¶¶23-24. It alleges that the officers seized the gun without probable cause. Id. at ¶33.

---

[1] The plaintiff numbered two of the paragraphs in the second amended complaint "17;" this is the first one. Dkt. No. 45 at 6.

The amended complaint then contains a series of paragraphs asserting that the "race-based policing policies under former chief cop Flynn were so heavily engrained in the Milwaukee cop culture, that they continue long after Flynn's ouster." Id. at ¶37. The complaint alleges that "[t]he conduct, as alleged . . . , of defendants, and against [the plaintiff], took place in substantial part because [the plaintiff] is a Black Negro." Id. at ¶43. It asserts that during the allegedly unlawful search, the defendant officers made racists comments. Id. at ¶44.

The second amended complaint also contains several paragraphs discussing alleged segregation in Milwaukee housing and policing and asserts that Mayor Tom Barrett has done nothing about this. Id. at ¶¶53-58.

Finally, the second amended complaint alleged that on July 5 2020, a Milwaukee police car parked in front of the plaintiff's house at 3:30 a.m. and sat there, and that when the plaintiff called 911 to ask if there was a problem and then took a photo of the car, the car sped off. Id. at ¶¶59-60.

A. The Plaintiff's Discovery Motions

Since then, the plaintiff has filed eight discovery motions. Dkt. Nos. 75, 81, 83, 86, 87, 89, 94 and 95.

In March 2021, the plaintiff filed a "Motion to Determine Sufficiency of Answers or Objections." Dkt. No. 75. This motion asserts that the plaintiff had met and conferred (via email) with defense counsel six times over a one-week period in March. Id. at 2. The entire substance of this motion is the plaintiff's reproduction of what purports to be a March 13, 2021 email from the plaintiff

4

to "cop attorney" which expresses his hope that defense counsel either would stipulate "admit" to his requests for admission, stipulate that the defendants did not timely respond to those requests or "simply amend your responses to take out the legal double-talk about vague and ambiguous." Id. at 1. In support of this motion, the plaintiff a brief citing cases from Pennsylvania, the Ninth Circuit Court of Appeals and the Third Circuit Court of Appeals, none of which are binding on this court. Dkt. No. 76. He appears to be upset by the fact that defense counsel objected to some of his requests as "vague and ambiguous" when he didn't think they were vague or ambiguous—particularly requests about body camera images in which the plaintiff asked for "Time in Zulu." Id. at 3. He claims that in other cases, defense counsel had "no problem understanding what the Z, in Zulu time represents, and was able to answer the complaint without claiming ignorance or objecting to the 'Z'." Id. at 5. He asked the court to deem admitted requests in which he disagreed with the defendants' objections.

    The court will deny this motion. First, it is procedurally improper. If, after trying in good faith to resolve a discovery dispute with the other side, a party believes he has a valid, legal basis for requesting discovery that the other side has not provided, the proper thing to do is to file a motion to compel under Federal Rule of Civil Procedure 37. The Federal Rules do not provide for a motion to determine the sufficiency of discovery responses. Second, the defendants have a right to object to discovery requests that they believe are vague or ambiguous (or for other reasons). Fed. R. Civ. P. 26(a)(3)(B). Third, the

5

court had no idea what "Zulu Time" was. The court Googled the phrase and learned that it is another way of referring to Universal Time Coordinated (what used to be called Greenwich Mean Time), the time at the Zero Meridian. https://www.cogoport.com/shipping-terms/zulu-time-114. The defendants' objection that the plaintiff's demands for times in "Zulu Time" were vague and ambiguous were not improper; the defendants (and the court) should not have to conduct research to figure out what the plaintiff means. Fourth, the plaintiff is not entitled to demand that the defendants provide him with body camera times converted to UTC. Central Standard Time, the time applicable in Milwaukee, is just fine.

Less than a month later, the plaintiff filed a similar motion, titled "Plaintiff's Motion to Determine Sufficiency of Answers." Dkt. No. 81. It is hard to tell, but it appears that this motion objects to the fact that the defendants did not provide "all documents that constitute the complete file of any investigation" into citizen complaints of illegal searches, or "all documents that constitute citizen complaints for illegal seizure," or "all documents that constitute citizen complaints for fabrication." Id. at 2.

Those three discovery requests are staggeringly broad. The plaintiff did not include a time frame; as written, the request seeks all documents from citizen complaints of illegal searches or seizures from the beginning of the Milwaukee Police Department for every officer. The cost of complying with such a demand would be astronomical and the time it would take to produce those documents would drag this lawsuit out for years. The plaintiff has sued a

6

handful of officers. Whether there have been citizen complaints filed regarding hundreds, probably thousands, of other officers could have only the most tangential relevance to the plaintiff's claims. And the court agrees with the defendants that a request for documents relating to "citizen complaints for fabrication" is vague—what does "fabrication" mean? Fabricating evidence? Making up facts? The court will deny this motion.

On May 5, 2021, the court received from the plaintiff a request to allow him either to efile or to send his pleadings "on CD or Jump Drive, that the court will be able to enter into the ECF for me." Dkt. No. 83. The court will deny this motion. Section I(1) of the court's ECF Filing Policies and Procedures provides that *pro se* parties cannot file electronically unless authorized by the court. https://www.wied.uscourts.gov/e-filing/ecf-policies-and-procedures. As a paper filer, the plaintiff has inundated the court (and the defendants) with multiple, sometimes repetitive, often difficult-to-comprehend motions and other documents. The court will not encourage him to file more by allowing him to efile. Nor will it allow him to file documents on a disk or drive that a clerk's office employee would have to take the time to upload to the system. Not only would this be a misuse of the time of clerk's office staff, but it could expose the ECF system to viruses or other malware.

Not three weeks later, the plaintiff filed another motion to determine sufficiency of the defendants' answers; he penciled in "COMPEL DISCOVERY" next to the heading "memorandum of points and authorities in support of motion to determine sufficiency of answers or objections." Dkt. No. 86 at 1.

7

This motion claimed that the plaintiff had spent two weeks trying to resolve a discovery dispute without involving the court. Id. at 1. The body of the motion demanded that the court require defendant Barrett to respond to certain requests for admission:

> 4) The strategy of Police Chief Edward A. Flynn, who has held that position since 2008, as being "broken windows on steroids," referring to the theory of monitoring urban neighborhoods to prevent minor crimes like vandalism. admit or deny
>
> 5) "it's accurate to say that our metropolitan area is certainly one of the most racially segregated areas of the country," Milwaukee Mayor Tom Barrett said. admit or deny
>
> 7) As Milwaukee's Chief Executive, Tom Barrett is making neighborhoods safer by strengthening the Milwaukee Police Department, targeting gangs and <u>illegal guns</u> and forging partnerships with faith-based groups and neighborhood organizations to strengthen the community's role in reducing crime. admit or deny
>
> <u>8a) Washington Highlands was the first metro Milwaukee neighborhood to implement specific restrictions on the race of the people who could live there. As described in a 1979 report by the Metropolitan Integration Research Center, when Washington Highlands was developed in 1919, the property deeds of the development specified that "at no time shall the land included in Washington Highlands or any part thereof, or any building thereon be purchased, owned, leased, or occupied by any person other than of white race." This restriction remained in place until it was made illegal during the Civil Rights Era.</u> admit or deny
>
> 15) Milwaukee Police Department has focused on surveillance and frequent traffic stops as a way to reduce crime, something that has in turn led to some resentment among the people they are charged with protecting. admit or deny
>
> 17) Milwaukee to pay $3.4 million to settle 'stop-and-frisk' lawsuit. The rate at which black residents were detained for traffic or pedestrian stops was more than six times higher than whites, according to the ACLU's analysis. admit or deny

> 23) Milwaukee's segregation continues to fester like an infected wound. They include fair housing ordinances that continue to be difficult to enforce; the impact of historic discriminatory policies such as racially restrictive covenants, redlining and other unfair lending practices; freeway projects such as the construction of I-43 that facilitated white flight and isolated central city neighborhoods; and the unwillingness of suburban Milwaukee counties to provide affordable housing options or welcome non-white neighbors. admit or deny.

Id. at 2-3.

The court will deny this motion. It appears that the plaintiff has lifted quotations from various sources without identifying those sources. It is not clear whether the plaintiff is asking the defendants to admit that the media sources say what he asserts they say, or whether he has asking the defendants to admit that what the sources state is true. Either way, the plaintiff has alleged that particular officers did certain things to violate his rights because, among other reasons, he is Black. What other people may have said about the city of Milwaukee or the police department has only tangential relevance to whether these particular defendants discriminated against the plaintiff.

On June 10, 2021, the plaintiff filed a motion to compel discovery and motion to determine the sufficiency of answers (noting it was his fifth motion), asserting that the defendants had responded to only one production request and one interrogatory and that he would be asking for additional time to conduct discovery after the court ruled on his motions. Dkt. No. 87. He asked the court to compel the defendants to answer interrogatories "on page 2, 3" and to compel them to provide documents "satisfying production request on page 5 of 5." Id. The plaintiff attached a series of discovery requests, ranging from

9

requests to produce any reports anyone may have written about "the incident" to asking for "expert witnesses, including treating physicians, who are expected to testify at trial." Dkt. No. 87-1 at 2. He also appears to have attached discovery responses from a different case. Id. at 3-4. He demands that the defendants provide him with "EACH AND EVERY INSTANCE OF WHERE [Lautenbach and Wierzchowski] SEIZED A GUN." Id. at 4.

By the time the plaintiff filed this motion, the defendants had asked the court to stay the proceedings given their staffing issues. The court delayed in ruling on that motion, but by that time, the plaintiff had notice that the City Attorney's Office was short-handed. Some of the requests he filed make no sense—asking for identification of "treating physician" experts in a case in which there is no allegation of physical injury is illogical. Some of the requests are overly broad, such as the defendant's request that the defendants provide him with documentation of each and every instance in which two of the defendant officers seized a gun. His attachment of discovery responses from a different case is illogical, but it illustrates another problem with his requests: he makes statements, rather than making specific requests. The court will deny this motion.

On June 15, 2021, the plaintiff filed a motion to modify the scheduling order, asking the court to give him an additional seventy-five days after the court either ruled on his motions or after the defendants "make available the Chief of Police for a deposition." Dkt. No. 89. The court will deny that motion without prejudice because, as the court will explain further in this order, it is

10

Case 2:20-cv-00782-PP   Filed 10/12/21   Page 10 of 15   Document 101

going to stay all discovery until the defendants file their motion for summary judgment.

On August 30, 2021—two and a half months *after* the court granted the defendants' motion to stay all proceedings (dkt. no. 91)—the plaintiff filed a motion to compel discovery, demanding that the court require the defendants to "provide complete and full responses to the requests attached to this Motion." Dkt. No. 94. It was improper for the plaintiff to file a motion to compel when the court had stayed all proceedings, including discovery. The court will deny this motion.

Finally, on August 31, 2021, the plaintiff filed a motion asking the court to extend the discovery deadline until he could depose the Milwaukee Chief of Police. Dkt. No. 95. Again, the court had stayed proceedings through August 31, 2021, so this request was improper. As for the plaintiff's demands to depose the chief of the Milwaukee Police Department, the question of whether there is a reason for the plaintiff to depose the chief is better answered after the defendants file their substantive motion for summary judgment. The court will deny this motion without prejudice.

B.  The Defendants' Motion to Stay Discovery Pending Ruling on the Defendants' Dispositive Motion (Dkt. No. 97)

The defendants have asked the court to stay discovery until they can file a dispositive motion. Dkt. No. 97. They assert that it would conserve time and resources if the court were to suspend discovery until the parties could brief, and the court could rule on, that motion. Id. at 1-2. They ask the court to set a briefing schedule and to stay discovery until after the court has ruled. Id. at 1-

2. In their supporting brief, the defendants argue that "[g]iven the sheer volume of discovery requests Plaintiff has made, a ruling on a dispositive motion could streamline that discovery and make i[t] more efficient for all parties to limit its scope should rulings be made to dismiss certain constitutional claims." Dkt. No. 97-1 at 5. The defendants attached to the motion *fifty* pages of email communications between the plaintiff and defense counsel; the plaintiff often appears to add new discovery demands with each responsive email. Dkt. No. 97-3.

The court is going to grant the defendants' motion. The court had stayed proceedings through August 31, 2021 to allow the City Attorney's Office to address staffing issues. The next step in the process would have been to set new discovery and dispositive motions deadlines. But given the plaintiff's voluminous filings and even more voluminous communications with, and demands on, the defendants with regard to discovery, the court is not going to set new deadlines at this point. The court will stay discovery—which means that the plaintiff cannot have any further communications with defense counsel regarding discovery or serve any new discovery demands or file any further motions relating to past discovery demands—and set a briefing schedule for briefing the defendants' dispositive motion. Assuming that there are claims that survive the motion, the court then will schedule a status conference with the parties to talk about setting new dates.

The court notes, however, that the second amended complaint alleges two brief incidents—a search of the plaintiff's home that resulted in seizure of a

12

firearm and the parking of a police car outside his house in the wee hours of the morning. The number of email exchanges the plaintiff has had with defense counsel, the number of demands that the plaintiff has made for discovery and the number of discovery motions and other pleadings he has filed are disproportionate to those two, simple claims. Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery "that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The discovery the plaintiff has sought to date is utterly disproportionate to the needs of the case, is unduly burdensome and is overly broad. If there are claims that survive summary judgment, the court will impose limits on the discovery the plaintiff may seek, to avoid further abuses of the discovery process.

C.  The Plaintiff's Motion to Reschedule (Dkt. No. 99)

The plaintiff missed the telephone conference on September 24, 2021. He filed a motion, indicating that he missed the conference because he'd received his COVID-19 booster and he had a reaction to it. Dkt. No. 99. He asks the court to reschedule.

The court is sorry to hear that the plaintiff had a reaction to the booster but is glad that he received it. Given the court's rulings in this order, however, the court will deny without prejudice the plaintiff's motion to reschedule the

hearing. As the court has noted, it will schedule a hearing after it has ruled on the defendants' motion for summary judgement.

D. Conclusion

The court **DENIES** the plaintiff's motion to determine sufficiency of answers or objections. Dkt. No. 75.

The court **DENIES** the plaintiff's motion to determine sufficiency of answers. Dkt. No. 81.

The court **DENIES** the plaintiff's motion to efile or to file documents on CDs or drives. Dkt. No. 83.

The court **DENIES** the plaintiff's motion to determine sufficiency of answers. Dkt. No. 86.

The court **DENIES** the plaintiff's motion to compel and determine sufficiency of answers. Dkt. No 87.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to modify scheduling order. Dkt. No. 89.

The court **DENIES** the plaintiff's motion to compel discovery. Dkt. No. 94.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for extension of the discovery deadline. Dkt. No. 95.

The court **GRANTS** the defendants' motion to stay discovery pending ruling on the defendants' dispositive motion. Dkt. No. 97.

The court **ORDERS** that all discovery by any party is **STAYED** pending further order of the court.

The court **ORDERS** that if the defendants wish to file a dispositive motion, they must do so by the end of the day on **November 19, 2021**. The motion must comply with Fed. R. Civ. P. 56 and this court's Civil L.R. 56.

The plaintiff's response to the defendants' dispositive motion—which must comply with this court's Civil Local Rule 56—must be filed in time for the court to *receive* it by the end of the day on **January 7, 2022**.

If the defendants wish to file a reply in support of their dispositive motion, they must file it by the end of the day on **January 28, 2022**.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to reschedule. Dkt. No. 99.

Dated in Milwaukee, Wisconsin this 12th day of October, 2021.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **Chief United States District Judge**